**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TREEHOUSE SANCTUARY, INC., a Florida nonprofit corporation,

Plaintiff,

v.

THE CITY OF ST. PETERSBURG, FLORIDA, by and through KEN WELCH, in his official capacity as Mayor of the City of St. Petersburg, Florida,

Defendant.
_______________________________________/

CASE NO.:

## COMPLAINT

Plaintiff, TREEHOUSE SANCTUARY, INC., a Florida nonprofit corporation, files this Complaint against the Defendant, THE CITY OF ST. PETERSBURG, FLORIDA, by and through KEN WELCH, in his official capacity as Mayor of the City of St. Petersburg, Florida (the "City"), and alleges as follows:

## I. PARTIES

1. Plaintiff, TREEHOUSE SANCTUARY, INC., is a Florida nonprofit corporation ("TREEHOUSE SANCTUARY") and an interfaith religious organization operating at 919 10th Avenue North, St. Petersburg, Florida 33705 (the "Property").

2. TREEHOUSE SANCTUARY conducts and intends to continue conducting religious worship, religious ceremonies, weddings, faith-based gatherings, community events, and other activities at the Property.

3. TREEHOUSE SANCTUARY occupies and uses the Property pursuant to a written lease agreement with Treehouse Development Group, LLC, the owner of the Property. A true and correct copy of the lease agreement is attached as Exhibit "A."

4. Defendant, THE CITY OF ST. PETERSBURG, is a municipal corporation organized under the laws of the State of Florida. The City is sued by and through KEN WELCH, in his official capacity as Mayor, solely for prospective declaratory and injunctive relief. The City is responsible for the administration and enforcement of the fire, building, zoning, occupancy, and related requirements at issue in this action.

## II. JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including the First and Fourteenth Amendments, 42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. ("RLUIPA").

6. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims arising under Florida law because those claims arise from the same facts and occurrences as Plaintiff's federal claims.

7. This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and equitable relief pursuant to applicable law.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and the Property is located in St. Petersburg, Florida.

## III. BACKGROUND

9. The Property is a historic church building located at 919 10th Avenue North, St. Petersburg, Florida 33705.

10. The building was constructed in 1926 and was originally designed, permitted, and used as a place of religious assembly. Photographs depicting the Property are attached as Exhibit "B."

11. Historical documentation concerning the building, including a 1926 newspaper article, reports that approximately 1,250 people attended the church's opening service on Thanksgiving Day in 1926.

12. The building has not been converted to a different fundamental use and is sought to be used as a place of religious assembly.

13. Approximately three years before TREEHOUSE SANCTUARY opened, Noam and Irene Krasniansky, as principals of TREEHOUSE SANCTUARY, acquired the Property for the purpose of preserving the historic building and returning it to active community use.

14. TREEHOUSE SANCTUARY opened its doors in August 2025.

15. As an interfaith religious organization, TREEHOUSE SANCTUARY requires a flexible sanctuary capable of accommodating differing religious practices and traditions.

16. Depending upon the religious service or ceremony, the sanctuary may require forward-facing seating, circular seating arrangements, open floor space without seating, tables and chairs, or space for processions and other ceremonial activities.

17. In August 2025, Plaintiff removed fixed seating from the main sanctuary to accommodate those religious practices.

18. No structural alterations were made in connection with the removal of the seating, and no changes were made to the building's means of egress, exit capacity, exit access, exit discharge, or number of exits.

19. The City's Certificate of Occupancy does not identify fixed seating as a condition of occupancy.

20. Notwithstanding the continued religious assembly use of the Property, the City subsequently required the Property to close and took the position that Plaintiff was required to obtain a "change of use" before religious services or any related religious events or activities could resume.

## IV. FACTUAL ALLEGATIONS

21. From approximately April 2025 through August 2025, Plaintiff spent substantial time fundraising and making improvements to the Property, including installing new electrical systems and air-conditioning units.

22. On the day TREEHOUSE SANCTUARY opened, Plaintiff held a celebratory event attended by approximately 120 young adults which involved music and dancing.

23. A complaint concerning the event resulted in law enforcement entering the Property. No violation was identified, including with respect to noise levels.

24. Multiple ambulances were subsequently dispatched following a report by a neighbor that eight individuals had fainted. Upon entering the Property, emergency medical personnel found no such incidents and determined that such reports were false.

25. The following morning, Plaintiff hosted a community "farmer's market" inside the Property. Approximately 500 people attended over a six-

hour period, with a peak occupancy of approximately 150 persons at any one time. It is believed that additional complaints were made but were found baseless.

26. Later that week, a City fire official contacted Plaintiff and insisted upon conducting an inspection of the Property.

27. In or about early August 2025, a City fire official, accompanied by Inspector Blank, inspected the main sanctuary and downstairs hall.

28. Plaintiff thereafter sought approval from the City to hold a church meet-and-greet event at the Property.

29. The City informed Plaintiff that they could no longer use the building for assembly purposes and characterized the Property's activities as a "merchant expo."

30. The Fire Department subsequently permitted certain prescheduled community events during August 2025 subject to additional conditions, including an assembly permit and the presence of a Fire Marshal during the events.

31. Plaintiff made repeated efforts to resolve the City's concerns and reopen the Property for religious worship and assembly.

32. Plaintiff contacted the City's Mayor on multiple occasions concerning the reopening of the Property. The Mayor directed Plaintiffs to work with City staff.

33. In September 2025, the City's Fire Department required the Property to close.

34. The City asserted that "substantial modifications" had been made to the building.

35. The only "substantial modifications" identified by the City were the removal of furniture and fixed seating as among the modifications at issue.

36. The removal of fixed seating did not change the fundamental use of the Property as a place of religious assembly.

37. Nevertheless, the Fire Department determined that Plaintiff was required to pursue a "change of use" and obtain zoning approval before religious services could resume.

38. The City treated the purported "change of use" as a basis for imposing additional requirements upon Plaintiff.

39. Among those requirements, the City demanded installation of a full automatic sprinkler system and voice alarm system.

40. The Property was constructed before the adoption of current building and fire codes, and Plaintiff was advised that the City's requirements would

necessitate substantial structural work, engineering, significant capital expenditures, and ultimately destroy the historic appearance of the interior of its Church.

41. Plaintiff sought to preserve the historic character of the Property while satisfying legitimate fire and life-safety requirements.

42. Plaintiff contends that applicable fire-safety requirements permit consideration of alternative measures for historic buildings.

43. The City did not identify any change in the Property's fundamental occupancy or use from religious assembly.

44. The City did not identify a distinct life-safety hazard caused by the removal of fixed seating.

45. The City's position nevertheless remained that the Plaintiff could not resume religious worship without satisfying the additional requirements.

46. Plaintiff was at one point advised that the Property could continue operating if fixed seating were reinstalled.

47. Despite termite damage to some of the existing chairs, Plaintiff reinstalled available seating with additional spacing in an effort to satisfy the City's requirements.

48. On or about November 25, 2025, Inspector Mike Blank conducted another inspection of the Property.

49. During that inspection, Blank advised Plaintiff that the Property appeared satisfactory subject to several minor corrections.

50. Blank advised Plaintiff that an inspection report would be provided so that the corrections could be made, and a Sunday service could proceed.

51. The inspection report was not received that week, and Plaintiff was required to cancel the planned Sunday service.

52. On or about November 18, 2025, contrary to earlier representations, Blank issued a further inspection report imposing additional requirements, including a full sprinkler system and voice alarm system.

53. Because Plaintiff remained unable to use the building, Plaintiff began holding outdoor community events in the Property's parking lot in January 2026.

54. The Fire Department subsequently contacted the Plaintiff after seeing the events posted on social media and advised that the Plaintiff could not conduct such events unless and until a "change of use" was filed.

55. The Fire Department later issued a reinspection report without entering the building and directed Plaintiff to reinstall chairs in the third-floor mezzanine, although those chairs had been removed years before Plaintiff acquired the Property.

56. Upon information and belief, the removal of those chairs, approximately twenty years earlier, did not then result in a "change of use" determination or a requirement for installation of a sprinkler system.

57. Plaintiff remained willing to comply with reasonable fire and safety requirements necessary to operate the Property as an interfaith religious institution.

58. Plaintiff sought additional means of demonstrating compliance while preserving the historic structure of its Church.

59. On February 2, 2026, Plaintiffs' architect, Architecture Humanity Awareness, LLC ("AHA"), submitted a detailed letter to the City's Fire Marshal and Deputy Fire Marshal requesting approval of alternative life-safety measures for the continued use of the historic church as an existing assembly occupancy.

60. Following its evaluation of the Property's historic status and proposed scope of work, AHA addressed the Property's historic designation, the limited scope of repairs, preservation of historic features and equivalent fire protection, the City's proposed sprinkler and fire-alarm requirements, and alternative measures intended to provide life safety while preserving the historic structure. A true and correct copy of AHA's February 2, 2026, letter is attached as Exhibit "C."

61. On March 7, 2026, Plaintiff submitted a formal written demand to the City's Fire Marshal requesting that the City permit the resumption of religious assembly, withdraw the "change of use" requirement, and permit Treehouse Sanctuary to resume its religious services, weddings, and related community activities. A true and correct copy of the demand letter, dated March 7, 2026, is attached as Exhibit "D."

62. On March 17, 2026, the City responded in writing to Plaintiff's February 2, 2026, historic-waiver request and March 7, 2026, demand letter. The City acknowledged that the Property was classified as an existing assembly occupancy and had a Certificate of Occupancy for assembly use.

63. The City asserted that the removal of fixed seating and the removal of basement partitions and ceiling finishes constituted significant modifications, and that Plaintiff's intended sanctuary configurations triggered a "change of use" process. The City denied the requested waiver and maintained that additional fire-alarm and sprinkler requirements applied. A true and correct copy of the City's March 17, 2026, response is attached as Exhibit "E."

64. Plaintiff also learned through public-records requests that City personnel were coordinating with personnel from the Building, Planning, Historical, and Zoning Departments concerning the Property and Plaintiff's use of the building.

65. City officials also referred to Plaintiff's August 2025 celebration as a "rave." The event was a community-based event offering music and art displays to promote the property for future religious and community-based events, not a "rave."

66. A City inspector also informed Plaintiff that an internal complaint concerning an alleged indoor party had prompted an inspection in or about November 2025. No such party occurred.

67. Plaintiff has reason to believe that numerous unverified complaints from unknown sources have been relied upon in connection with the City's enforcement actions concerning the Property.

68. Two other historic churches are located within approximately one mile of the Property and have recently been converted to residential use.

69. The Property is located adjacent to a gas station and across the street from a car paint shop and large vacant lots.

70. Approximately twenty years ago, the City authorized construction of a residence in close proximity to the rear of the Property, leaving little meaningful buffer between the two properties.

71. Upon information and belief, comparable religious and secular assembly uses have been permitted by the City without being subjected to the

same combination of "change of use," occupancy, sprinkler, and voice-alarm requirements imposed upon Plaintiffs.

72. Upon information and belief, Historic Bethel AME Church, located at 912 3rd Avenue North in St. Petersburg, Florida 33705, has not been required to install comparable sprinkler or voice-alarm systems under materially similar circumstances.

73. Upon information and belief, First Baptist Church, located at 1900 Gandy Blvd N, St. Petersburg, Florida 33702, has permitted nonreligious events at its facilities, including candlelight concerts, without being required to undergo a corresponding "change of use."

74. Upon information and belief, Coastal Creative, a commercial venue, located at 2201 1st Ave S, St. Petersburg, Florida 33701, permits religious assemblies by Artisan Church without requiring the property to be reclassified as a church.

75. Upon information and belief, Allendale United Methodist Church, located at 3803 Haines Road North, St. Petersburg, Florida 33703, has removed fixed pews from its main sanctuary and uses flexible seating to accommodate its activities.

76. Upon information and belief, St. Pete First United Methodist Church, located at 212 3rd Street North, St. Petersburg, Florida 33701, has removed

fixed pews from its chapel and adopted a flexible seating arrangement. The chapel is also used for ticketed events, art shows, and other non-religious events.

77. Upon information and belief, Universal Unitarian Church, located at 100 Mirror Lake Drive North, St. Petersburg, Florida 33701, rents its church halls for weddings, meetings, concerts, birthday celebrations, and other events. Photographs depicting flexible seating arrangements and sanctuary configurations at other churches are attached as Exhibit "F."

78. Plaintiff anticipates obtaining additional information concerning the City's treatment of comparable church properties and the different way the operation of these properties is treated by the City through discovery and public records.

79. Since September 2025, Plaintiff has been totally unable to conduct regular religious worship at the Property.

80. Plaintiff has likewise been totally unable to conduct weddings, religious gatherings, church fundraisers, and other religiously oriented community activities at the Property.

81. Plaintiff's community outreach activities also included collecting food donations at community events for Kind Mouse, a nonprofit organization in St. Petersburg that helps provide food to children experiencing hunger.

82. The City's constructive closure of the Property has prevented Plaintiff from holding the events through which these food-collection efforts were conducted, interrupting this charitable outreach.

83. Plaintiff was required to cancel a wedding scheduled for September 2025 after the Fire Department refused to permit the event to occur.

84. Plaintiff has been totally unable to schedule future weddings, which are commonly booked six to sixteen months in advance, because Plaintiff cannot reasonably commit the Property while the City's restrictions remain in effect. Nor can Plaintiff offer or schedule any religious events due to the City's restrictions.

85. Prospective clients and members of the community have continued to express interest in using the Property, but Plaintiff has been unable to accept bookings because of the ongoing prohibition of any activity imposed by the City.

86. The continuing closure has caused not only the forced cessation of religiously oriented events, but has also caused Plaintiff's financial losses, including lost revenue, cancelled events, and lost prospective bookings of religiously related events.

87. The closure has also impaired Plaintiff's ability to conduct their religious and community activities and has adversely affected Plaintiff's reputation.

88. The financial consequences associated with the City's ongoing restrictions resulted in bankruptcy proceedings involving the owner of the Property, Treehouse Development Group, LLC, styled as *In re: Treehouse Development Group, LLC*, Case No. 8:25-bk-09027, pending in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division.

89. The City's restrictions remain ongoing and continue to prevent Plaintiff from using the Property for religious worship and assembly.

90. All conditions precedent to the maintenance and prosecution of all causes of action asserted herein have occurred or have been waived.

91. The Plaintiff has retained the undersigned counsel and has agreed to compensate counsel for all reasonable and necessary work related to representation in this action.

## COUNT I
## VIOLATION OF THE FIRST AMENDMENT — FREE EXERCISE
## (42 U.S.C. § 1983)

92. Plaintiff realleges and incorporates paragraphs 1 through 91 as if fully set forth herein.

93. The First Amendment to the United States Constitution protects Plaintiff's right to freely exercise religion.

94. Plaintiff's religious worship, ceremonies, gatherings, and related activities at the Property constitute religious exercise protected by the First Amendment.

95. The City has substantially interfered with Plaintiff's religious exercise by preventing Plaintiff from using the Property for religious worship and assembly and by conditioning such use upon compliance with the City's "change of use," occupancy, fire-safety, and related requirements.

96. In connection with Plaintiff's use of the Property, the City has exercised discretion in determining whether Plaintiff's modification and intended activities constituted or triggered a "change of use" and in determining what additional requirements would be imposed upon Plaintiff before they could resume religious activities.

97. Upon information and belief, the City has not applied the challenged requirements in a neutral and impartial manner but has subjected Plaintiff to restrictions that have not been imposed upon comparable secular assembly uses.

98. Upon information and belief, the City's treatment of Plaintiff, including the disparate treatment alleged herein and statements concerning Plaintiff's

activities, supports an inference that the challenged enforcement was motivated, at least in part, by hostility toward or disfavor of Plaintiff's religious exercise.

99. To the extent the City's enforcement is not neutral and generally applicable, the City must satisfy the applicable constitutional standard.

100. The City cannot demonstrate that prohibiting Plaintiff from using the Property for religious worship is sufficiently tailored to further a compelling governmental interest where less restrictive means is available to address legitimate fire and life-safety concerns.

101. The City's conduct therefore violates Plaintiff's rights under the Free Exercise Clause of the First Amendment.

102. Defendant, City of St. Petersburg, is liable under 42 U.S.C. § 1983 as the challenged conduct was undertaken pursuant to an official policy, custom, or practice of the City, or pursuant to a decision or ratification by a City official possessing final policymaking authority concerning the challenged conduct.

103. As a direct and proximate result of the City's conduct, Plaintiff has suffered and continues to suffer deprivation of their constitutional rights, including the inability to use the Property for religious worship and assembly.

104. Plaintiff is entitled to declaratory and injunctive relief against the City, including an injunction prohibiting the City from continuing to enforce its challenged requirements in a manner that unlawfully prevents Plaintiff from using the Property for religious worship and assembly.

## COUNT II
## VIOLATION OF THE FOURTEENTH AMENDMENT – EQUAL PROTECTION
## (42 U.S.C. § 1983)

105. Plaintiff realleges and incorporates paragraphs 1 through 91 as if fully set forth herein.

106. The Fourteenth Amendment to the United States Constitution guarantees Plaintiff equal protection of the laws.

107. Plaintiff is similarly situated, for purposes relevant to the challenged enforcement, to comparable religious and secular assembly uses subject to the City's regulatory authority.

108. Upon information and belief, the City has permitted comparable secular assembly uses to conduct comparable activities or modifications without imposing the same combination of "change of use," fire-suppression, alarm, occupancy, and related requirements imposed upon Plaintiff.

109. The City has therefore subjected Plaintiff to materially different treatment from similarly situated entities.

110. Upon information and belief, the disparate treatment was intentional and was undertaken, at least in part, because Plaintiff's use of the Property is religious in nature.

111. The City's differential treatment of Plaintiff is not rationally related to the City's asserted regulatory interests where comparable secular assembly uses have not been subjected to equivalent restrictions under materially similar circumstances.

112. The City's conduct therefore violates Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment.

113. Defendant, City of St. Petersburg, is liable under 42 U.S.C. § 1983 as the challenged conduct was undertaken pursuant to an official policy, custom, or practice of the City, or pursuant to a decision or ratification by a City official possessing final policymaking authority.

114. As a direct and proximate result of the City's conduct, Plaintiff has suffered and continues to suffer an ongoing constitutional injury, including the inability to use the Property for religious worship and assembly.

115. Plaintiff is entitled to declaratory and injunctive relief against the City, including an injunction prohibiting the City from subjecting Plaintiff to discriminatory enforcement of its fire, building, zoning, occupancy, or related

requirements and from continuing to prevent Plaintiff from using the Property for religious worship and assembly on the basis of such unequal treatment.

## COUNT III
## VIOLATION OF RLUIPA – SUBSTANTIAL BURDEN
## (42 U.S.C. § 2000cc(a))

116. Plaintiff realleges and incorporates paragraphs 1 through 91 as if fully set forth herein.

117. RLUIPA provides that no government shall impose or implement a land-use regulation in a manner that imposes a substantial burden on religious exercise unless imposition of the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest.

118. Plaintiff engages in religious exercise at the Property, including worship services, religious ceremonies, religious gatherings, and related activities.

119. Plaintiff possesses a legally cognizable interest in using the Property for religious exercise.

120. The City imposed and implemented restrictions concerning Plaintiff's use of the Property through individualized and property-specific determinations concerning Plaintiff's particular use of the Property.

121. Specifically, City officials determined that Plaintiff's removal and reconfiguration of fixed seating, together with Plaintiff's intended use of the sanctuary, constituted or triggered a "change of use" and required additional zoning or occupancy approval.

122. The City thereafter imposed additional fire-suppression and alarm requirements as conditions of Plaintiff's continued use of the Property.

123. These determinations were made with respect to Plaintiff's particular Property, the particular modifications made to the Property, and Plaintiff's intended use of the sanctuary.

124. Plaintiff disputes the City's determination that their continued use of the Property constituted a "change of use" under the applicable Code provisions. Plaintiff's use of the Property remains religious assembly, and the removal and reconfiguration of seating was undertaken to accommodate the differing religious practices of Plaintiff's interfaith congregation.

125. Since September 2025, the City's enforcement has prevented Plaintiff from using the Property for religious worship.

126. The City's actions have therefore imposed a substantial burden on Plaintiff's religious exercise by preventing Plaintiff from conducting core religious activities at their existing place of worship.

127. The burden is substantial because the City’s enforcement has not merely delayed or inconvenienced Plaintiff; it has prevented Plaintiff from conducting religious worship, religious ceremonies, and other religious activities at the Property.

128. The City cannot demonstrate that prohibiting Plaintiff from using the Property for religious worship is the least restrictive means of furthering a compelling governmental interest.

129. Less restrictive means are available to address legitimate fire and life-safety concerns while permitting Plaintiff to continue using the Property for religious exercise.

130. The City's conduct therefore violates RLUIPA, 42 U.S.C. § 2000cc(a).

131. Plaintiff is entitled to declaratory and injunctive relief against the City and all other relief authorized by law, including attorney's fees and costs pursuant to 42 U.S.C. § 2000cc-2.

## COUNT IV
## VIOLATION OF RLUIPA – EQUAL TERMS
## (42 U.S.C. § 2000cc(b)(1))

132. Plaintiff realleges and incorporates paragraphs 1 through 91 as if fully set forth herein.

133. RLUIPA prohibits a government from imposing or implementing a land-use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

134. Plaintiff is a religious assembly and institution subject to the City's land-use and property-use requirements.

135. The City has imposed and implemented restrictions concerning Plaintiff's use of the Property through its individualized "change of use" determination and the enforcement actions resulting therefrom.

136. Upon information and belief, comparable nonreligious assembly uses have been permitted to conduct comparable activities or modifications without being subjected to the same "change of use" determination and the same extensive fire-suppression and alarm requirements imposed upon Plaintiffs.

137. The City's treatment of Plaintiff is therefore less favorable than the treatment afforded similarly situated nonreligious assemblies or institutions.

138. The City has accordingly treated Plaintiff's religious assembly on less than equal terms with comparable nonreligious assembly uses.

139. The City's conduct violates 42 U.S.C. § 2000cc(b)(1).

140. Plaintiff is entitled to declaratory and injunctive relief against the City and all other relief authorized by law, including attorney's fees and costs pursuant to 42 U.S.C. § 2000cc-2.

**COUNT V**
**VIOLATION OF RLUIPA – NONDISCRIMINATION**
**(42 U.S.C. § 2000cc(b)(2))**

141. Plaintiff realleges and incorporates paragraphs 1 through 91 as if fully set forth herein.

142. RLUIPA prohibits a government from imposing or implementing a land-use regulation that discriminates against an assembly or institution on the basis of religion or religious denomination.

143. Plaintiff is an interfaith religious institution using the Property for religious worship and assembly.

144. The City has imposed and implemented restrictions against Plaintiff in connection with their religious use of the Property, including the property-specific "change of use" determination and the resulting restrictions on Plaintiff's religious activities.

145. Upon information and belief, comparable uses have not been subjected to equivalent restrictions.

146. The City's treatment of Plaintiff, considered together with the disparate treatment and statements and conduct of City officials described herein,

supports an inference that Plaintiff was subjected to the challenged restrictions because of the religious nature of their activities.

147. Among other things, City officials characterized Plaintiff's August 2025 community celebration as a "rave," and a City official likewise referred to the event as a "rave" in correspondence concerning Plaintiff's activities.

148. The foregoing circumstances support an inference that the City's enforcement was motivated, at least in part, by disfavor toward Plaintiff's religious use and activities.

149. The City's conduct therefore violates 42 U.S.C. § 2000cc(b)(2).

150. Plaintiff is entitled to declaratory and injunctive relief against the City and all other relief authorized by law, including attorney's fees and costs pursuant to 42 U.S.C. § 2000cc-2.

## COUNT VI
## VIOLATION OF THE FLORIDA RELIGIOUS FREEDOM RESTORATION ACT
## (Fla. Stat. § 761.03 et seq., pursuant to 28 U.S.C. § 1367)

151. Plaintiff realleges and incorporates paragraphs 1 through 91 as if fully set forth herein.

152. The Florida Religious Freedom Restoration Act ("FRFRA") provides that the government may not substantially burden a person's exercise of religion, even through a rule of general applicability, unless application of the

burden is essential to further a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest.

153. Plaintiff's worship services, religious ceremonies, religious gatherings, and related activities constitute the exercise of religion.

154. The City's enforcement actions have substantially burdened Plaintiff's exercise of religion by preventing Plaintiff from using the Property for religious worship and assembly.

155. The City's restrictions have prevented Plaintiff from conducting religious activities at the Property since September 2025.

156. The City cannot demonstrate that preventing Plaintiff from using the Property for religious exercise is the least restrictive means of furthering a compelling governmental interest.

157. Less restrictive means are available to address legitimate fire and life-safety concerns while permitting Plaintiff to continue their religious use of the Property.

158. The City's actions therefore violate Fla. Stat. § 761.03.

159. Plaintiff is entitled to declaratory and injunctive relief against the City under Fla. Stat. § 761.03 and, if successful, reasonable attorney's fees and costs pursuant to Fla. Stat. § 761.04.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in their favor and against Defendant and:

A. Declare that the City's enforcement actions against Plaintiff violate the Free Exercise Clause of the First Amendment to the United States Constitution;

B. Declare that the City's enforcement actions against Plaintiff violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

C. Declare that the City's enforcement actions against Plaintiff violate RLUIPA, 42 U.S.C. § 2000cc et seq.;

D. Declare that the City's enforcement actions against Plaintiff violate the Florida Religious Freedom Restoration Act, Fla. Stat. § 761.03 et seq.;

E. Enter a temporary injunction prohibiting the City from enforcing its fire, building, zoning, occupancy, and related requirements against Plaintiff in a manner that unlawfully prevents Plaintiff from using the Property for religious worship and assembly;

F. Enter a permanent injunction prohibiting the City from enforcing its fire, building, zoning, occupancy, and related requirements against Plaintiff in a manner that unlawfully prevents Plaintiff from using the Property for religious worship and assembly;

G. Enjoin the City from enforcing its "change of use" determination against Plaintiff in violation of applicable law or from preventing Plaintiff from using the Property for religious worship and assembly based upon an unlawfully imposed "change of use" requirement;

H. Enjoin the City from imposing fire-suppression, alarm, seating, or other requirements upon Plaintiff in a manner that violated Plaintiff's rights under the First Amendment, RLUIPA, or FRFRA;

I. Grant Plaintiff such other declaratory and injunctive relief as is necessary to restore and protect Plaintiff's ability to use the Property for religious worship, religious ceremonies, and related religious activities;

J. Award Plaintiff their reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 2000cc-2, Fla. Stat. § 761.04, and any other applicable law; and

K. Grant such other and further declaratory or injunctive relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

DATED: October 12, 2026,

Respectfully submitted,

*/s/ Luke Lirot*
Luke Lirot, Esq. | FBN: 714836

*/s/ Rachel Ricks*
Rachel Ricks, Esq. | FBN: 1049469

**LUKE CHARLES LIROT, P.A.**
2240 Belleair Road, Suite 190
Clearwater, Florida 33764
Telephone: (727) 536-2100
Facsimile: (727) 536-2110
Email: luke2@lirotlaw.com
Email: rachel@lirotlaw.com
Email: team@lirotlaw.com
*Counsel for Plaintiffs*